IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY IRVING REYNOLDS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| et al. | : | NO. 09-3096 |

MEMORANDUM

Bartle, C.J.                                                    March 2, 2010

　　　　On August 5, 2009, the plaintiff, Dr. Gary Irving
Reynolds, filed his original complaint against defendants, the
Federal Bureau of Prisons ("BOP"), Office of Inspector General
and Eric L. Holder, Dr. Odeida Dalmasi, Dr. Newton Kendig,
Michael Nelson, Dr. John Manenti, Tracey Brown, Bruce Blackmon,
Troy Levi, and Camille Duchaussee.  Plaintiff's subsequent seven-
count amended complaint against these defendants alleges
violation of the plaintiff's Fifth Amendment rights under the
United States Constitution (count one), violation of the Health
Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101, et
seq. (count two), violation of the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552 (count three), and violation of 42
U.S.C. § 1985 (count four).  He also brings state law claims for
civil conspiracy (count five), "intentional interference" (count
six), and defamation (count seven).

　　　　In his prayer for relief, Dr. Reynolds seeks
compensatory and punitive damages.  In addition, he requests the

restoration of his clinical privileges to practice medicine at the Philadelphia Federal Detention Center ("FDC"), his place of former employment. He further seeks to compel the withdrawal of the "Adverse Action Report" concerning his termination from the BOP, which was submitted to the National Practitioner Data Bank and the Healthcare Integrity and Protection Data Bank. Finally, Dr. Reynolds requests production of unredacted documents regarding BOP investigations of him pursuant to the FOIA, 5 U.S.C. § 552.

Before the court are: (1) the emergency motion of the plaintiff for an "ex-parte temporary restraining order and preliminary injunction;" and (2) the motion of the defendants to dismiss Dr. Reynolds' amended complaint for lack of subject matter jurisdiction or, in the alternative, for summary judgment.

I.

The following facts are either undisputed or viewed in the light most favorable to the plaintiff.

On October 25, 1998, Dr. Reynolds was hired as a medical officer by the BOP and Federal Correctional Institution in Cumberland, Maryland. Approximately two years later, on November 5, 2000, he applied for and was hired as a medical officer at the BOP's FDC in Philadelphia. At or around this time, Dr. Reynolds, who is a member of the U.S. Air Force Reserve, was also awarded clinical privileges to practice medicine at Malcolm Grow Medical Center, a military treatment facility.

-2-

As a medical officer at FDC, Dr. Reynolds was responsible for performing pre-employment physical examinations on candidates for employment and providing patient care and treatment for inmates. Between 2000 and 2004, several female inmates filed complaints with the FDC alleging that Dr. Reynolds made inappropriate sexual advances toward them during medical exams. Accordingly, on October 15, 2004, the Department of Justice, BOP and FDC required Dr. Reynolds to have present a full-time female BOP staff member during his examinations of female inmates. The staff member was to remain in the room at all times during the examination and any subsequent counseling. In March, 2005, this requirement was eliminated. Nonetheless, in September, 2006, a misconduct investigation regarding allegations of sexual misconduct and substandard administration of patient care remained open.

On October 10, 2006, Dr. Reynolds conducted a pre-employment physical exam on a female candidate without a female staff member present. The employee candidate asserted later that Dr. Reynolds inappropriately examined her breasts during the exam. This allegation was sustained following an internal investigation.

In November, 2006, Dr. Newton Kendig, Assistant Director of the Health Services Division, requested that an external focus review of Dr. Reynolds be conducted. Defendant Michael Nelson, the Regional Medical Director of the North Central Region, and Dr. Paul Harvey, the Clinical Director of FCI

-3-

Elkton, conducted the review.  They concluded that Dr. Reynolds provided substandard medical care to four inmate patients, exercised poor medical management of high risk patients, failed to follow-up on routine clinical issues identified during ordinary patient care, and exhibited poor interpersonal skills in his interactions with other professional staff and inmates.  In April, 2007, Dr. Reynolds' clinical privileges were placed in abeyance pending the investigation by the Department of Justice into the death of an inmate under Dr. Reynolds' care.  Dr. Dalmasi, Clinical Director of the FDC, assigned Dr. Reynolds the functions of "Telemont Officer" while his clinical privileges were being held in abeyance.

The following year, in October, 2008, Dr. Reynolds was charged with abuse of position in connection with the October, 2006 pre-employment examination of a female candidate.  On January 5, 2009, he was terminated by the BOP.  The following month, the BOP filed an Adverse Action Report with the Healthcare Integrity and Protection Data Bank.  It set forth that Dr. Reynolds was terminated after the sexual abuse allegations of a female employee candidate were sustained.

Dr. Reynolds appealed his termination to the Merit Systems Protection Board ("MSPB").  On September 11, 2009, the Administrative Judge issued an initial decision affirming the agency's removal of Dr. Reynolds from his position as a medical officer.  The Judge found credible the employment candidate's testimony concerning Dr. Reynolds.  The Judge further found that

-4-

Dr. Reynolds abused his position as a medical officer by inappropriately examining her breasts.  On October 6, 2009, Dr. Reynolds filed a petition for review of the initial decision with the MSPB.  On February 5, 2010, the MSPB issued its Final Order affirming the initial decision by the administrative judge.  Dr. Reynolds has advised that he will appeal this decision to the federal district court presiding over his racial discrimination lawsuit (E.D. Pa. Civ.A. No. 08-4270).

On November 9, 2009, Dr. Reynolds filed in this court his "emergency motion for ex parte temporary restraining order and preliminary injunction filed under protective order."  He seeks to enjoin the defendants from instituting or continuing professional review actions in connection with his clinical privileges at the FDC and to have all reports submitted to the Data Bank withdrawn.  Thereafter, as noted above, the defendants filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction or, in the alternative, a motion for summary judgment.

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction may take one of two forms:  a facial attack, which "contests the sufficiency of the pleadings" or a factual attack, which disputes "the existence of certain jurisdictional facts alleged by the plaintiffs."  Common Cause of Pennsylvania v. Commonwealth of Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009); Carpet Group

Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000). When reviewing a facial attack on the subject matter jurisdiction of the court, we must only consider the allegations of the complaint and accompanying documents in the light most favorable to the plaintiff. Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). If a factual attack is presented, then the court may consider evidence outside of the pleadings. Id. We are presented with a factual attack on the subject matter jurisdiction of the court and, accordingly, have considered and relied on documents and evidence outside of the amended complaint and answer.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id. After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

III.

In count one of the amended complaint, Dr. Reynolds alleges that his due process rights under the Fifth Amendment were violated when his clinical privileges at the FDC were placed in abeyance without a hearing.[1] Dr. Reynolds cites to the BOP's Program Statement Number P6027.01, which states: "Any LIP [licensed independent practitioner] whose clinical privileges are denied, reduced, restricted, or revoked for more than 30 days, is entitled to a fair and equitable remedy process." We will construe count one as a <u>Bivens</u> action, that is, an action which lies against federal officials who have violated the plaintiff's rights under color of federal law. It is analogous to a claim under 42 U.S.C. § 1983. <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971); <u>Brown v. Phillip Morris, Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001). While a <u>Bivens</u> action may proceed against the nine individual defendants, the Supreme Court held that a <u>Bivens</u> action cannot be maintained against a federal agency. <u>Federal Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471, 485 (1994). Thus, count one will be dismissed against the BOP and Office of Inspector General on sovereign immunity grounds. It is well settled that the United States Government and its agencies are immune from suit absent a waiver. <u>Id.</u> at 475; <u>Zynger v. Dep't of Homeland Security</u>, 615 F. Supp. 2d 50, 56 (E.D.N.Y. 2009). No waiver has occurred here.

---

1. This count of the amended complaint is not based on, and does not reference, the plaintiff's termination.

The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. 95-454, 92 Stat. 1111, which is codified in scattered sections of Title 5 of the United States Code, is a "detailed administrative and judicial process for resolving the employment-related complaints of federal employees." Arakawa v. Reagan, 666 F. Supp. 254, 258 (D. D.C. 1987). The CSRA "provides a comprehensive statutory scheme which enables federal employees to obtain remedies for prohibited personnel practices engaged in by federal agencies." Sarullo v. U.S. Postal Service, 352 F.3d. 789 (3d Cir. 2003). The Supreme Court has described the CSRA as an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations[.]" Bush v. Lucas, 462 U.S. 367, 388 (1983). Given the existence of this "elaborate remedial system," the CSRA provides the exclusive remedy for a federal employee's claims for money damages for alleged Constitutional torts arising out of the employment context. Id. In Schweiker v. Chilicky, 487 U.S. 412 (1988), the Supreme Court held that a Bivens action for a constitutional tort is barred when "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration."

Our Court of Appeals has clearly held that the CSRA provides the exclusive remedy for constitutional torts where the claimant seeks economic damages. Sarullo, 352 F.3d at 795; Mitchum v. Hurt, 75 F.3d 30, 34 (3d Cir. 1996). However, under

-8-

Mitchum, the CSRA does not eliminate the court's jurisdiction to review constitutional claims by federal employees arising out of the employment context to the extent the claimant seeks declaratory or injunctive relief. Id. at 36. The availability of "federal equitable relief against threatened invasions of constitutional interests" is presumed. Id. at 35 (citing Hubbard v. EPA, 809 F.3d 1 (D.C. Cir. 1986).

Dr. Reynolds' Bivens claim for a violation of his due process rights arises out of his employment relationship with the BOP. Dr. Reynolds complains that the defendants did not hold a hearing with respect to the abeyance of his clinical privileges to practice medicine at the FDC, as required by the BOP's internal procedures and policies. Clearly, any alleged violation in connection with the refusal to hold such a hearing arose out of the employment context. The CSRA provides the exclusive remedy for any alleged violation to the extent the plaintiff seeks economic relief, which he does in paragraph 102 of count one. Accordingly, we will dismiss count one of the amended complaint for lack of subject matter jurisdiction to the extent he seeks economic and punitive damages. Sarullo, 352 F.3d at 797.

However, under Mitchum, we have jurisdiction and authority to award injunctive and declaratory relief with respect to a constitutional violation. In the plaintiff's prayer for relief, he requests equitable relief in the form of a court order requiring the withdrawal of the abeyance action and restoration

of his clinical privileges to practice medicine at FDC
Philadelphia. Compl., ¶ 1.

Dr. Reynolds' claim against the individual defendants
in count one, as noted above, is a <u>Bivens</u> claim. In the absence
of a federal statute of limitation for such a claim, we apply
Pennsylvania's two-year limitations period for personal injury
actions. <u>Brown v. Tollackson</u>, 314 F. App'x. 407, 408 (3d Cir.
2008). Such a claim accrues when the plaintiff knew or should
have known of the alleged civil rights violation. <u>Sameric Corp.
of Delaware, Inc. v. City of Phila.</u>, 142 F.3d 582, 599 (3d Cir.
1998).

Dr. Reynolds was informed on April 3, 2007 that his
clinical privileges would be placed in abeyance pending an
investigation into the November, 2005 death of an inmate under
his care. The April 3, 2007 memorandum from the Clinical
Director of the FDC states:

> This is to notify you that effective upon the
> issuance of this memorandum, I am placing
> your clinical privileges in <u>abeyance</u>, until
> the results of a pending investigation into
> the death of inmate [...]
> Abeyance is a temporary removal of clinical
> privileges during a period in which clinical
> deficiencies or conduct allegations are
> evaluated/investigated. You are not approved
> to provide direct patient health care during
> the period of abeyance. Although the
> abeyance is not an adverse clinical privilege
> action, results of the evaluation or
> investigation may result in an adverse
> clinical privilege action. I will make a
> final recommendation regarding your clinical
> privileges at the conclusion of the
> evaluation/investigation.

On that same date, Dr. Reynolds was assigned to work as a "Telemont Officer."  The amended complaint further states that the Malcolm Grow Medical Center informed Dr. Reynolds in May, 2007 that the renewal process for his clinical privileges with that facility would not continue until the abeyance issue with the BOP was resolved.  The plaintiff did not file a motion for leave to proceed in forma pauperis in this lawsuit until July 10, 2009 and his complaint until August 5, 2009.

The defendants are correct that the plaintiff's claims under count one of the amended complaint were filed out of time.  Dr. Reynolds knew in April, 2007 that his clinical privileges at the FDC were being placed in abeyance.  His complaint for alleged procedural due process violations was filed more than two years later.

Plaintiff contends that the statute of limitations for count one should be equitably tolled because he has never been informed that the investigation into the death of the inmate under his care, which prompted the abeyance of his clinical privileges, was ever completed.  This contention is without merit.  The defendants' failure to complete the investigation does not toll the statute of limitations.  Dr. Reynolds knew in April, 2007 that he was no longer permitted to practice medicine at the FDC.  The statute of limitations began running at that point in time.  Count one is time barred, and we will grant the motion of the individual defendants for summary judgment on that

count to the extent Reynolds seeks equitable relief for a constitutional violation.

Count two of the amended complaint alleges a violation of §§ 11112(a), 11112(b), and 11131 through 11134 of the HCQIA. 42 U.S.C. § 11112, et seq. The HCQIA was enacted in 1986 in response to the "increasing occurrence of medical malpractice and the need to improve the quality of medical care[.]" 42 U.S.C. § 11101(1). Congress recognized a "national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(2). Professional peer review was identified as the remedy to this "nationwide" problem. 42 U.S.C. § 11101(3). Peer review involves the examination of the competence or professional conduct of an individual physician by his or her colleagues on the medical staff of the hospital at which they practice. Depending on the results of the peer review, the individual physician's clinical privileges may be adversely affected. If adverse action is taken, the health care entity is required to report that development to the relevant state board of medical examiners, which is then obligated to make a report to the Secretary of Health and Human Services. 42 U.S.C. § 11133(a), (b). Hospitals have a duty to request from the Secretary of Health and Human Services information reported under this Act. 42 U.S.C. § 11135(a).

Dr. Reynolds asserts a claim for relief under the HCQIA against Drs. Dalmasi, Nelson and Kendig. We agree with the numerous courts that have held there is no private right of action for a physician who is the subject of a peer review action under the HCQIA to sue for a violation of that statute. Doe v. U.S. Dep't of Health and Human Services, 871 F. Supp. 808 (E.D. Pa. 1994); Untracht v. Fikri, 454 F. Supp. 2d 289, 327 (W.D. Pa. 2006); Hancock v. Blue Cross-Blue Shield of Kansas, Inc., 21 F.3d 373, 374 (10th Cir. 1994). The defendants have improperly denominated their motion with respect to this count as one for summary judgment. We will dismiss count two of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Count three is brought against the BOP, Office of Inspector General, and Department of Justice under the FOIA.[2] Plaintiff alleges that during the MSPB hearing on his appeal, a document entitled the Final Investigative Report was introduced into evidence but was not provided to him prior to the hearing. He complains that he did not have the opportunity to verify the report's authenticity and that his ability to present an effective defense during his MSPB hearing was hindered by the defendants' refusal to transmit the document. It appears he

---

2. The Department of Justice is not a named defendant in this action. Plaintiff's attempt to assert a claim against it in count three is procedurally improper.

received the document at the hearing.  Nonetheless, he brings this claim under the FOIA because he also seeks the document in a FOIA request.

Defendants argue that the plaintiff's request is essentially a discovery dispute in connection with the matter presently pending with the MSPB and that the MSPB is the proper forum for resolution of whether the document was improperly withheld.  We agree.  Greenfield & Chimicles, P.C. v. Department of Energy, 561 F. Supp. 97 (E.D. Pa. 1983).  The requested document was allegedly introduced into evidence during the MSPB hearing.  Any questions regarding its authenticity or the plaintiff's right to verify the document should have been raised during the hearing before the MSPB.  Accordingly, we will dismiss this count without prejudice to its assertion before the MSPB.

Count four of the amended complaint contains a claim under 42 U.S.C. § 1985 for conspiracy to deprive Dr. Reynolds of his property interests in practicing medicine at the FDC and Malcolm Grow Medical Center.[3]  Specifically, Dr. Reynolds alleges that Clinical Director Dr. Dalmasi, with the consent of Acting Warden Tracey Brown, placed his clinical privileges in abeyance without adequate justification and alerted Malcolm Grow Medical Center of the abeyance.  Dr. Dalmasi and Assistant Director of the Health Services Division Dr. Kendig purportedly furthered the

---

3.  In his response to the defendants' motion, the plaintiff withdraws all of his claims related to his termination from the BOP.  Thus, our discussion of count four will focus on the plaintiff's claims with respect to his clinical privileges.

conspiracy by failing to conduct a hearing with regard to the abeyance. Associate Warden of Operations Bruce Blackmon and Employee Services Manager Camille Duchaussee prepared a Proposal to Remove, and Mr. Levi allegedly removed Dr. Reynolds based on unsustained charges.

This count is brought against all defendants, individual and non-individual alike, "in their individual capacities." Paragraph 134 of count four avers that plaintiff "is entitled to economic and punitive damages in an amount to be determined at trial." As with count one, we must dismiss this claim for relief for lack of jurisdiction to the extent it seeks monetary damages because it arises out of the employment context and, therefore, the CSRA affords the plaintiff the exclusive remedy for the alleged violation. Sarullo, 352 F. 3d at 796.

However, we have jurisdiction to address the plaintiff's request for injunctive and declaratory relief. Mitchum, 73 F.3d at 36. Claims under 42 U.S.C. § 1985(3) for conspiracy to violate constitutional and federal substantive due process rights are subject to Pennsylvania's two-year statute of limitations for personal injury actions. Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989). The two-year statute of limitations begins to run from the date of each overt act causing damage to the plaintiff.

To the extent that Dr. Reynolds' claims under 42 U.S.C. § 1985 are premised on a conspiracy to deprive him of his property interests in his clinical privileges at the FDC and

Malcolm Grow Medical Center, the clock has run.  As noted above,
Dr. Reynolds was informed in April, 2007 that his clinical
privileges were being placed in abeyance and that he was no
longer permitted to provide direct patient health care.  He did
not file his complaint until more than two years later in August,
2009.  We will grant defendants motion for summary judgment on
count four to the extent plaintiff seeks injunctive and
declaratory relief.

    Counts five, six and seven of the amended complaint are
state-law causes of action for civil conspiracy, intentional
interference and defamation.  Again, these three claims are
brought against all defendants, individual and non-individual
alike, "in their individual capacities."  Absent a waiver of
sovereign immunity, the claims against the BOP and the Office of
Inspector General, agencies of the United States Government,
cannot survive.  The United States, as sovereign, must consent to
be sued and the terms of such consent define the jurisdiction of
the district courts to entertain such suit.  <u>United States v.
Testan</u>, 424 U.S. 392, 398 (1976).  The Federal Tort Claims Act
("FTCA") provides a limited waiver of the sovereign's immunity
for certain causes of action sounding in tort pursuant to the
terms and conditions of the statute.  28 U.S.C. § 2674.  Section
1346(b) confers exclusive jurisdiction in the district courts for

> civil actions on claims against the United
> States, for money damages, accruing on and
> after January 1, 1945, for injury or loss of
> property, or personal injury or death caused
> by the negligent or wrongful act or omission

> of any employee of the Government while
> acting within the scope of his office or
> employment, under circumstances where the
> United States, if a private person, would be
> liable to the claimant in accordance with the
> law of the place where the act or omission
> occurred.

28 U.S.C. § 1346(b).

Pursuant to 28 U.S.C. § 2679, the FTCA is the exclusive
remedy for the plaintiff's claims against the BOP and Office of
Inspector General for actions sounding in tort.  It provides:

> The authority of any federal agency to sue
> and be sued in its own name shall not be
> construed to authorize suits against such
> federal agency on claims which are cognizable
> under section 1346(b) of this title, and the
> remedies provided by this title in such cases
> shall be exclusive.

Thus, under the FTCA, claims against federal agencies
must be brought against the United States.  In re Sunrise Sec.
Litig., 818 F. Supp. 830, 835 (E.D. Pa. 1993).  The United States
would have to be substituted as the proper party defendant in
this matter in order for the plaintiff to proceed.  Even were it
substituted, however, the plaintiff's claims are barred because
he has not shown that he first timely presented his claim "to the
appropriate Federal agency," as required under the FTCA.  28
U.S.C. § 2675(a).  Accordingly, we will dismiss the plaintiff's
tort claims against the federal agencies in counts five, six, and
seven with prejudice.  Forbes v. Reno, 893 F. Supp. 476, 481
(W.D. Pa. 1995), aff'd, 91 F.3d 123 (3d Cir. 1996).

Dr. Reynolds also brings these claims against the
individual defendants in their individual capacities.  Count

-17-

five, which asserts a claim for civil conspiracy, is barred by
the statute of limitations.  Under Pennsylvania law, the statute
of limitations for civil conspiracy is the same as the statute of
limitations for the underlying tort.  Kingston Coal Co. v. Felton
Mining Co., Inc., 690 A.2d 284, 287 (Pa. Super. Ct. 1997);
Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).
Dr. Reynolds' claim for civil conspiracy is predicated on the
defendants' deprivation of his clinical privileges to practice
medicine without due process of law.  We apply the two-year
statue of limitations for civil rights actions under 42 U.S.C.
§ 1983 and 42 U.S.C. § 1985.  As noted above, the plaintiff knew
in April, 2007 that his clinical privileges were being placed in
abeyance, yet did not file suit until August, 2009.  Accordingly,
even if this claim could otherwise go forward, this claim is
untimely.  We will grant the motion of the defendants for summary
judgment with respect to count five of the amended complaint.

        According to count six of the amended complaint, the
individual defendants in their individual capacities
intentionally interfered with Dr. Reynolds' business
relationships with third parties, such as the Air Force Reserve
and StaffCare.  Dr. Reynolds provided medical services for these
entities in the past and StaffCare recently solicited him for a
medical position.  He claims that the defendants knew that
prolonged abeyance of his clinical privileges would interfere
with his professional and economic relationships with the Air
Force Reserve and StaffCare.  Pennsylvania courts apply the two-

year statute of limitations found in 42 Pa. Cons. Stat. § 5524(3) to claims for tortious interference with a contract. <u>Bednar v. Marino</u>, 646 A.2d 573, 577 (Pa. Super. Ct. 1994). The statutory period begins to run "as soon as the right to institute and maintain a suit arises[.]" <u>Id.</u> (citing <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 468 A.2d 468, 471 (1983)). Again, Dr. Reynolds knew in April, 2007 that the BOP was taking action with respect to his clinical privileges and that he was being assigned a position as "Telemont Officer." Again, even assuming this claim could otherwise proceed, it is out of time because it was filed more than two years later.

Finally, count seven of the amended complaint asserts a claim for relief for defamation against the individual defendants in their individual capacities. Dr. Reynolds alleges that the Adverse Action Report filed with the Data Bank on February 5, 2009 contained false information. Specifically, he maintains that it falsely states that the female candidate for employment who was the subject of the October, 2006 pre-employment examination filed a complaint regarding the incident. Dr. Reynolds contends that it also falsely states that the investigation concerning the incident sustained the sexual abuse allegations. The statute of limitations for a defamation claim under Pennsylvania law is one year. 42 Pa. Cons. Stat. Ann. § 5523(1). The allegedly defamatory report was filed in February, 2009 and Dr. Reynolds' complaint was filed in August, 2009. Thus, Dr. Reynolds' claim for defamation is timely if

-19-

properly brought against the individual defendants in their individual capacities.

Claims against individuals employed by the federal government are barred if they are acting within the scope of employment, and a plaintiff may sue only the United States for the acts of its employees. However, pursuant to 28 U.S.C. § 2679(d)(1), the Attorney General must certify that the individual defendants were acting within the scope of their employment when they filed the allegedly defamatory Adverse Action Report. Without the certification, plaintiff may proceed against a government employee under state law. So far, no such certification has been filed. We will grant the Government leave to file and serve such a certification within thirty days.

In sum, we will enter an Order granting the motion of the defendants to dismiss the plaintiff's amended complaint for lack of subject matter jurisdiction with respect to counts one and four insofar as the plaintiff seeks economic damages. We will further enter an order granting the motion of the defendants for summary judgment with respect to counts one and four to the extent they seek equitable relief and with respect to counts five and six. We enter an order dismissing count two of the amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Finally, we will grant leave for the defendants to file a certification from the Attorney General in connection with the issue of whether the individual defendants were acting within

the scope of their employment regarding the conduct that forms
the basis for the defamation claim in count seven.  In light of
our rulings on the motion of the defendants "to dismiss and for
summary judgment," we will deny the emergency motion of Dr.
Reynolds for an "ex-parte temporary restraining order and
preliminary injunction."